THE STATE OF WASHINGTON, *Respondent*, v. RICHARD KROIS, *Appellant*.*

*Robt. W. Garver*, for appellant (appointed counsel for appeal).

*R. DeWitt Jones* and *Robert L. Harris*, for respondent.

WEAVER, J.—June 10, 1966, an information was filed charging defendant-appellant, Richard Krois, with the crime of assault "with a dangerous weapon likely to produce bodily harm." He was arrested and released on $2,500 bail the same day.

June 24, 1966, defendant entered a plea of not guilty. At the request of counsel, defendant was examined by a psy-

*Reported in 445 P.2d 24.

chiatrist, Dr. Augusto Proano, whose exhaustive report filed with the court December 20, 1966, concluded:

DIAGNOSIS:
1. *Personality Makeup*:
   Passive, aggressive personality, aggressive type with strong sociopathic traits.
2. *Psychiatric Syndrome*:
   Schizophrenic disorder, paranoid reaction.

PROGNOSIS:

I consider Mr. Krois to be a very sick individual who needs intense and prolonged psychiatric treatment which, due to the nature of his multiple problems, could not be treated as an out-patient and required therefore hospitalization. His emotional disorder renders him dangerous to himself and others.

December 30, 1966, an amended information was filed charging defendant with felonious assault and infliction of "grievous bodily harm with or without a weapon." RCW 9.11.020 (3).

The same day, December 30, 1966, defendant pleaded guilty to the amended information.

The trial judge stated that he had a copy of Dr. Proano's report but had not had an opportunity to study it.[1] He remarked, however, that "the Court does have some insight in this because of the trial of his [defendant's] brother."[2]

On the recommendation of the prosecuting attorney and defense counsel, based upon their discussions, evaluation of Dr. Proano's report, and counsel's discussion with defendant's mother, the court, on January 3, 1967, entered an order which provided:

[T]he defendant shall be ordered forthwith to be transferred to the custody of the State Hospital at Western State Hospital, or such other mental institution as deemed appropriate for such psychiatric treatment and

---

[1] February 24, 1967, the same trial judge stated: "I have read it [Dr. Proano's report]. I read it *before* Mr. Krois came before us on the 30th day of December, 1966." (Italics ours.)

[2] Defendant's brother had apparently been charged and tried separately for aiding and abetting defendant in the alleged assault. It is not denied that defendant's brother was acquitted.

care; that the said defendant is to remain in the custody and control of such institution until such time as the State Institution deems that said defendant is safe to be at large and no longer considered dangerous to himself and others, and that defendant shall remain within such facility until further order of the Court.

The order of January 3, 1967, entitled "Order Directing Defendant to State Hospital," is a bizarre instrument. It certainly does not purport to be a judgment and sentence entered after a plea of guilty to a charge of second degree assault. The order commits defendant to a state hospital or mental institution, although he had not been charged with being insane. On the one hand, the order fixed the duration of defendant's confinement to be until "the State Institution deems that said defendant is safe to be at large;" on the other hand, it ordered that "defendant shall remain within such facility until further order of the Court." It purports to incarcerate defendant for an indefinite period.

The order of January 3, 1967, carries its own death warrant. Although technically its validity is not before us on this appeal, it is the fountain of the facts from which this appeal springs.

January 4, 1967, defendant was admitted to Western State Hospital. He received extensive psychiatric evaluation, neurological examinations, and psychological tests by the staff of the hospital.

February 9, 1967, the clinical director of the hospital reported to the superior court that

It was the unanimous opinion at staff conference that Mr. Krois did not have any mental illness or abnormalities that could be treated in a mental hospital, and it was their recommendation that he be returned to the custody of the authorities in Clark County.

On the same day, the hospital discharged defendant "from unauthorized leave," for defendant had voluntarily left the hospital prior to its report to the court. Defendant later stated in open court:

. . . I feel I've been taken in a little bit. They stick me up in jail for a hospital—a mental hold. The doctors

up there [Western State Hospital] told me I was put in that hospital illegally, and they didn't want me up there. Also the doctor told me if he were me he'd take off and go to Florida, or someplace—just as much as telling me to go. And that staff knew I was taking off, because I told them I probably would, and. I had my stuff packed, and they knew it. They probably watched me walk out the door.

Defendant was apprehended and brought before the court on February 24, 1967, for sentencing. Before the court entered judgment and sentence, defendant's counsel moved to permit defendant to withdraw his plea of guilty and to reinstate his former plea of not guilty. This motion was based upon the premise that his plea of guilty had been made in reliance upon an alleged promise of the prosecuting attorney's office that he could not receive hospital and medical treatment for his mental problems unless he pleaded guilty. Defendant did not receive hospital care; the hospital discharged him after examination.

The court denied the motion to withdraw the plea of guilty. Defendant was sentenced to a maximum term of 10 years in a state correctional facility; hence, this appeal.

■ An appeal from a judgment and sentence entered after a plea of guilty brings before the Supreme Court for review an order denying a motion, made prior to entry of the judgment and sentence, to withdraw the plea of guilty. *State v. Rose*, 42 Wn.2d 509, 517, 256 P.2d 493 (1953).

On numerous occasions, we have approved the rule that it is within the sound discretion of the trial court to permit the withdrawal of a plea of guilty and the entry of a plea of not guilty. *State v. Olmsted*, 70 Wn.2d 116, 422 P.2d 312 (1966). *State v. Rose, supra.* The discretion, however, is "to be exercised liberally in favor of life and liberty." *State v. Harris*, 57 Wn.2d 383, 385, 357 P.2d 719 (1960). We affirm the principle that we will not reverse a trial court's decision upon this question unless the record discloses a manifest abuse of that discretion, but the rule is not applicable to the instant case.

Oral argument before this court was both enlightening

and startling, especially after it had been prodded by pertinent and searching questions from the bench.

It would serve no useful purpose and would unnecessarily extend this opinion to detail the record, the contents of the briefs, and the oral argument. They support our conclusion that defendant's plea of guilty, entered December 30, 1966, was a "bargained plea." From everything before us, we conclude that defendant's plea of guilty was based upon a misconception of the facts and a misunderstanding of his legal rights. In these, he was misled by both the prosecuting attorney's office and by his own counsel. It is apparent to us that defendant was led down the primrose path to plead "guilty" so that he could get promised hospital care, which he never received.

■ To satisfy the requirements of due process of law, a plea of guilty must be voluntary. In *In re Woods v. Rhay*, 68 Wn.2d 601, 605, 414 P.2d 601 (1966), this court said:

> To be voluntary, a plea of guilty must be freely, unequivocally, intelligently and understandingly made in open court by the accused person with full knowledge of his legal and constitutional rights and of the consequences of his act. It cannot be the product of or induced by coercive threat, fear, persuasion, promise, or deception. (Citing cases.)

■ Defendant's plea was not unequivocal; hence, it was not voluntary. The abortive order of January 3, 1967 (quoted *supra*), stands as proof. Denial of defendant's request to plead not guilty was not an abuse of discretion by the trial court; it was a denial of due process of law, as guaranteed by the fourteenth amendment to the Constitution of the United States and article 1, section 3, of the Washington state constitution. See *In re Palmer v. Cranor*, 45 Wn.2d 278, 273 P.2d 985 (1954).

The judgment and sentence is reversed; the case is remanded to the superior court with instructions to accept defendant's plea of not guilty to the amended information.

It is so ordered.

FINLEY, C. J., ROSELLINI and HALE, JJ., and WARD, J. Pro Tem., concur.